# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# DELTA DIVISION

ADAM GROSCH,                                                    PLAINTIFF,

VS.                                             CIVIL ACTION NO. 2:06CV204-P-A

TUNICA COUNTY, MISSISSIPPI;
TUNICA COUNTY DEPUTY SHERIFF
DORNAE MOSBY; HWCC-TUNICA, INC.;
AND HOLLYWOOD CASINO
CORPORATION,                                                    DEFENDANTS.

## MEMORANDUM OPINION

These matters come before the court upon Defendants Tunica County and Deputy Dornae Mosby's Motion for Summary Judgment [55]; Defendant Hollywood Casino Corporation's Motion for Summary Judgment [57]; and Defendant HWCC-Tunica, Inc.'s Motion for Summary Judgment [58]. After due consideration of the motions, the supporting briefs, and the responses filed thereto, the court is prepared to rule.

## I. FACTUAL BACKGROUND

On December 10, 2005 the plaintiff, Adam Grosch, who was 25 years old at the time, went to Fitzgerald's Casino in Tunica, Mississippi wherein he played blackjack. On that same day Fitzgerald's barred him from playing blackjack because they suspected him of being a card counter.[1] Later that day Grosch went to Hollywood Casino, obtained a players card after providing his identification and confirming that he was over the age of 21, and began playing blackjack. After finishing for the day, he cashed his chips.

---

[1] It is undisputed that card counting is not illegal, nor is it illegal for a casino to evict a player for card counting.

1

On December 11, 2005 Grosch returned to Hollywood Casino and went to the blackjack table after a security guard checked his ID to verify his age. Grosch showed his players card to a casino employee after asking if he could get a complimentary breakfast. After inputting the information from Grosch's players card into the casino system, the casino agreed to give him a complimentary breakfast. According to Grosch, he then went to the blackjack table and purchased $600 in chips without being asked to show his ID or verify his age. At the blackjack table, Grosch showed his players card to the dealer whereupon the dealer inputted the information into Hollywood's system.

After Grosch quickly won approximately $325, a casino official approached him, called him by name, and informed him that he was barred from the casino for card counting. According to the plaintiff, casino official Roberta Horton testified that she was the first one who told him that he had to leave. She testified that she did this after receiving a piece of paper indicating that Grosch had been evicted the day before from Fitzgerald's for card counting. Horton testified that she had no question about his age and that his eviction was not related to a question about whether he was over 21. According to Grosch:

> [W]hen I was asked to step away from the Blackjack table, they said I was no longer welcome at their casino, to which I said, "Okay." And they said, "We need to see your identification." And I said, "No, that's not necessary." And then they became hostile about it, so I picked up my chips and started to head out the door. And as I was trying to leave, they said, "If you leave right now, you are not going to be able to come back and cash those chips because we are trespassing your from this property, and if you step back into this casino, you will be arrested." And I said, "Okay." Well, I went back to the table I was playing at to get my chips colored up because they were all in $25 increments, and the dealer was about to color me up when the man who had approached me originally said, "Don't color those up for him." And at that point, I had the feeling that my chips were about to be confiscated, so I took them up from the table and I went to the cage where the same thing happened. The guy told the cage personnel not to cash my chips, at which point I asked him to please call the Gaming Commission, and he said, "Sir, I'll call the

2

Gaming Commission, and I'll also call the police." And he phoned in, and as we were standing there, came back and said, "Well, the Gaming Commission is going to be a while. It is going to take like 30 minutes for them to get here, but the police are on their way.

Plaintiff's Dep. at 28-9.

Sheriff's Deputies Dornae Mosby and Ricky Ray arrived at Hollywood in response to Hollywood's call to the Tunica County Sheriff's Department reporting that Grosch refused to leave the premises. Mosby asked Grosch for his ID whereupon Grosch conditioned same on Mosby not giving the ID to Hollywood. Mosby rejected that condition and Grosch once again refused to give Mosby his ID citing his concern that he did not want the casino to have it.

According to Mosby, Grosch became agitated and unruly and refused to produce his ID wherupon Mosby arrested Grosch for disorderly conduct. The plaintiff denies that he was unruly and avers that he was calm and cordial and spoke in a normal tone of voice. The plaintiff also states that Mosby told him he was being arrested for refusing to produce his ID.

Deputy Mosby's "Offense/Incident Report" states:

Upon arrival, I made contact with Hollywood Casino Security who advised that a subject was refusing to leave. I then made contact with the suspect Adam Grosch and asked him for his identification. The suspect refused after being asked several times. I then placed the suspect under arrest for Disorderly Conduct.

Deputy Mosby's Affidavit states that Grosch:

Did willfully and unlawfully, with intent to provoke a breach of peace or under such circumstances that a breach of peace have occurred or resulting in a breach of peace refuse or fail to comply with or obey the request or command or order of Deputy Dornae Mosby a law enforcement officer who had the authority to then and there arrest any person for a violation of the law.

Rather than taking Grosch to the county jail, Mosby took him to a security room in the casino where he was kept for approximately 45 minutes in handcuffs while casino officials explained to

3

him that he was being evicted and would be arrested for trespassing if he returned. While in the security room Mosby searched Grosch, took his ID, and gave it to the casino officials who made a copy of it. Just before Mosby took Grosch to the county jail, Grosch's ID was returned and the casino cashed his chips and gave Grosch the money. Mosby then took Grosch to the county jail where he was processed and released on a $500 bond.

In March 2006 Grosch flew to Memphis, Tennessee and drove to the Justice Court in Tunica County along with a Jackson, Mississippi attorney. Mosby was present for the hearing but the prosecutor suggested to the Justice Court Judge that the charges should be dismissed and they were accordingly dismissed.

Two days after the incident, Grosch avers that he wrote Hollywood Casino and asked it to preserve all video surveillance tapes since he was asking the Gaming Commission to conduct an investigation and was considering legal action. Hollywood claims to have lost the video surveillance of the plaintiff's encounter on the casino floor with Hollywood officials and with Deputy Mosby. However, the casino did not lose the footage of Grosch's detention in the casino security room.

The plaintiff filed the instant action on December 8, 2006 against Tunica County, Mississippi, Tunica County Deputy Sheriff Dornae Mosby, HWCC-Tunica, Inc., and Hollywood Casino Corporation, the latter of whom the plaintiff concedes is not the owner or operator of the subject Hollywood casino. Accordingly, Hollywood Casino Corporation's motion for summary judgment should be granted.

On March 8, 2006 the plaintiff was allowed to file an Amended Complaint. On August 24, 2007 he was allowed to file his Second Amended Complaint. On November 30, 2007 the plaintiff

4

filed a motion for leave to file a Third Amended Complaint. The court denied that motion on January 3, 2008.

The Second Amended Complaint seeks compensatory and punitive damages for the following causes of action against all remaining defendants, Tunica County, Deputy Mosby, and HWCC-Tunica, Inc.: (1) violation of the plaintiff's Fourth and Fourteenth Amendment rights against unreasonable seizures pursuant to 42 U.S.C. § 1983; (2) false arrest; (3) false imprisonment; (4) abuse of process; (5) malicious prosecution; and (6) violation of rights under the Mississippi Constitution. The Second Amended Complaint seeks damages against the casino, HWCC-Tunica, Inc., alone for (7) trespass to chattels and (8) conversion regarding the allegation that they would not allow Grosch to cash his chips unless he gave him his ID. The plaintiff also seeks damages from Tunica County alone for (9) failure to train and supervise its deputies properly.

All defendants have filed motions for summary judgment.

## II. DISCUSSION

### A. Summary Judgment Standards

Summary judgment should be entered only if "[t]here is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment has the initial burden of demonstrating through the evidentiary materials that there is no actual dispute as to any material fact in the case. *Celotex Corp. v. Catrett*, 477 U.S. 3l7, 323 (l986). On motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

250 (l986). In determining whether this burden has been met, the court should view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion. *Id*. Furthermore, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The summary judgment procedure does not authorize trial by affidavit. Rather, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson*, 477 U.S. at 255. Accordingly, a court may not decide any factual issues found in the record on motion for summary judgment, but if such material issues are present, the court must deny the motion and proceed to trial. *Impossible Elec. Tech. v. Wackenhut Protection Systems*, 669 F.2d l026, l03l (5th Cir. l982); *Environmental Defense Fund v. Marsh*, 65l F.2d 983, 99l (5th Cir. l98l); *Lighting Fixture & Electric Supply Co. v. Continental Ins. Co.*, 420 F.2d l2ll, l2l3 (5th Cir. l969).

Under the provisions of Federal Rule of Civil Procedure 56(e), a party against whom a motion for summary judgment is made may not merely rest upon his pleadings, but must, by affidavit, or other materials as provided in Rule 56, inform the court of specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

Summary judgment is not proper if a dispute about a material fact is "genuine," or in other words the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248. There is no such issue unless the evidence sufficiently supports the non-

moving party's version of the facts for a jury to return a verdict in the non-moving party's favor. *Id*. at 249. The relevant inquiry is whether or not there is sufficient disagreement on the facts to submit them to the jury or whether it is so one-sided that one party should prevail as a matter of law. *Id*. at 251. The issue must be genuine, and not pretended, and the evidence relied on to create such an issue must be substantial. *Southern Distributing Co. v. Southdown, Inc.*, 574 F.2d 824, 826 (5th Cir. 1978).

**B. Claims Against Tunica County and Deputy Mosby**

**1. Law Regarding the Showing of an Identification Card**

Whether Grosch was required by law to give Deputy Mosby his ID card is a question of law material to this case. Accordingly, the court will analyze this question first. The defendants argue that pursuant to *Hiibel v. Sixth Judicial District of Nevada*, 542 U.S. 177 (2004), Deputy Mosby had the legal right to require that Grosch give him his identification card. The plaintiff counters that like the ruling in *Brown v. Texas*, 443 U.S. 47 (1979), *Hiibel* requires that the officer possess probable cause or reasonable, articulable suspicion that the person committed a crime – something the plaintiff claims the deputies did not have. The plaintiff also argues that unlike the situations in *Brown* and *Hiibel*, there is no Mississippi statute or other law requiring the plaintiff to give his ID card. The plaintiff argues that the casino officials already knew Grosch's identity and age as evidenced by his allegation that the casino officials called him by name when they approached him. .

The Supreme Court in *Brown* held unconstitutional the detention of a man who refused to identify himself because the officers lacked any reasonable suspicion to believe the man was engaged or had engaged in criminal conduct. 443 U.S. at 53. In *Brown*, two officers stopped the

7

appellant after driving past an alley in a high crime area and observing him and another man walking in opposite directions, apparently concluding that the men had just been interacting with each other. The officer testified that he stopped the man because the situation "looked suspicious and we had never seen that subject in that area before." 443 U.S. at 48. The officers arrested the man after refusing to give his ID pursuant to Texas Penal Code Ann. § 38.02(a) (1974) which makes it a criminal act for a person to refuse to give his name and address to an officer "who has lawfully stopped him and requested the information." 443 U.S. at 49. The Court in *Brown* wrote that "[w]hen the officers detained appellant for the purpose of requiring him to identify himself, they performed a seizure of his person subject to the requirements of the Fourth Amendment ... and the Fourth Amendment requires that the seizure be 'reasonable.'" *Id.* at 50. Citing *Terry v. Ohio*, 392 U.S. 1 (1969), the Court in *Brown* "recognized that in some circumstances an officer may detain a suspect briefly for questioning although he does not have 'probable cause' to believe that the suspect is involved in criminal activity, as is required for a traditional arrest. However, we have required the officers to have a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity." *Id.* at 51. Ultimately, the Court in *Brown* concluded that "none of the circumstances preceding the officers' detention of appellant justified a reasonable suspicion that he was involved in criminal conduct." *Id.* at 51-52.

In *Hiibel*, the petitioner was arrested and convicted for refusing to identify himself during a constitutional *Terry* stop. The Court affirmed his conviction for violating Nevada's "stop and identify" statute, which only required that suspect disclose his name rather than his identification card, because the officers had reasonable and articulable suspicion that the petitioner had committed a crime justifying a *Terry* stop. Furthermore, the Court concluded that even if the officers have

8

reasonable suspicion to justify a *Terry* stop, "an officer may not arrest a suspect for failure to identify himself if the request for identification is not reasonably related to the circumstances justifying the stop." 542 U.S. at 188.

The primary difference between *Brown* and *Hiibel* is that in *Brown* the officers did not have reasonable suspicion that the person was engaged in or had engaged in criminal activity while the officers in *Hiibel* did have such reasonable and articulable suspicion. The standard remains the same in *Brown* and *Hiibel* in the sense that the two "stop and identify" statutes in question were deemed constitutional and a person could be lawfully and reasonably "seized" under the Fourth Amendment pursuant to those statutes for failing to identify him or herself as long as the officers have reasonable and articulable suspicion that the person had engaged in criminal activity.

What the Court in *Brown* and *Hiibel* did not say is that an officer can lawfully arrest someone simply for refusing to give him an identification card in the absence of a state statute requiring same. It is undisputed that Mississippi does not have a statute similar to Nevada or Texas requiring that a suspect give his identification during a *Terry* stop.

The defendants argue that Deputy Mosby lawfully arrested Grosch for disorderly conduct pursuant to Miss. Code Ann. § 97-35-7(1)(i) (2006) which provides in pertinent part:

> Whoever, with intent to provoke a breach of the peace, or under such circumstances as may lead to a breach of the peace, or which may cause or occasion a breach of the peace, fails or refuses to promptly comply with or obey a request, command, or order of a law enforcement officer, having the authority to then and there arrest any person for a violation of the law, to: ... (i) Act or do or refrain from acting or doing as ordered, requested or commanded by said officer to avoid any breach of the peace at or near the place of issuance of such order, request or command, shall be guilty of disorderly conduct, which is made a misdemeanor....

Whether Deputy Mosby had probable cause to believe that Grosch was then and there guilty

9

of disorderly conduct depends upon (1) whether Grosch exhibited the "intent to provoke a breach of the peace, or under such circumstances as may lead to a breach of the peace, or which may cause or occasion a breach of the peace"; (2) whether Grosch "fail[ed] or refuse[d] to promptly comply with or obey a request, command, or order of a law enforcement officer"; and (3) whether Deputy Mosby had "the authority to then and there arrest [Grosch] for a violation of the law."

There is conflicting testimony in the record as to whether Deputy Mosby arrested the plaintiff for being unruly in and of itself or for refusing to provide his ID card. Resolution of this conflicting testimony falls to a jury. There is also a question of fact as to whether Deputy Mosby had "the authority to then and there arrest [Grosch] for a violation of the law" given that Grosch was not required by law to provide his ID card to Mosby or the casino, nor did Mosby have the right to give the ID card to the casino. Another question of fact is whether Grosch can be said to have violated the law against trespassing after the casino informed Grosch that he was barred from the premises given Grosch's testimony that he did not leave because he wanted to cash his chips – the proceeds of which lawfully belonged to Grosch – and the casino would not allow him to do so unless he gave them his ID card, a request the casino had no legal right to require. It is undisputed that the casino issued the plaintiff a players card which contained identity information, including the plaintiff's age. Furthermore, it falls to the jury to determine whether the casino required the ID card in lieu of Grosch's players card because of a concern Grosch was under 21, or whether the casino wanted the ID card in order to copy it and forward copies to other casinos.

**2. MTCA Immunity**

Tunica County and Deputy Mosby argue that the plaintiff's state-law claims of false arrest, false imprisonment, abuse of process, and malicious prosecution are barred as to them pursuant to

two provisions in the Mississippi Tort Claims Act.

a. Reckless Disregard

First, section 11-46-9(1)(c) provides immunity for a governmental employee performing his duty "unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of the injury." The term "reckless disregard" in Section 11-46-9(1)(c) has been defined by the Mississippi Supreme Court to "embrace[] willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act." *Maye v. Pearl River County*, 758 So.2d 391, 394 (Miss. 1999). Furthermore, "[i]n the context of the statute [11-46-9(1)(c)], reckless must connote 'wanton or willful,' because immunity lies for negligence. And this Court has held that 'wanton' and 'reckless disregard' are just a step below specific intent...." *Id*.

b. Police Exemption

The second possible bar to the plaintiff's state-law claims against Tunica County and Deputy Mosby is the MTCA police exemption located in section 11-46-9(1)(h). The statute reads in pertinent part:

> A government entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim ... (d) Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a gov. entity or employee thereof, whether or not the discretion be abused.

Miss. Code. Ann. § 11-46-9(1)(h). The "MTCA police exemption is designed to protect law enforcement personnel from lawsuits arising out of the performance of their duties in law enforcement, with respect to the alleged victim." *Miss. Dept. of Pub. Safety v. Durn*, 861 So.2d 990, 997 (Miss. 2003). The Mississippi Supreme Court in *Mosby v. Moore* observed:

> [A]n official has no immunity to a civil action for damages if his breach of a legal duty causes injury and (1) that duty is ministerial in nature, or (2) that duty involves the use of discretion and the governmental actor greatly or substantially exceeds his authority and in the course thereof causes harm, or (3) the governmental actor commits an intentional tort. Beyond that, a government official has no immunity when sued upon a tort that has nothing to do with his official position or decision-making function and has been committed outside the course and scope of his office.

716 So.2d 551, 557 (Miss. 1998) (quoting *Barrett v. Miller*, 599 So.2d 599, 567 (Miss. 1992). With regard to the difference between discretionary and ministerial functions, the Mississippi Supreme Court has held that "is if the duty is one which has been positively imposed by law and in a manner or upon conditions which are specifically designated, the duty to perform under the condition specified, not being dependent upon the officer's judgment or discretion, the act and discharge thereof is ministerial." *Mosby*, 716 So.2d at 557.

Deputy Mosby's decision to arrest the plaintiff for disorderly conduct was a discretionary function. However, as the language cited *Mosby v. Moore* indicates, there are two other exceptions to the MTCA police exemption, both of which give rise to genuine issues of material fact in this case: first, whether Deputy Mosby greatly or substantially exceeded his authority and in the course thereof caused harm to the plaintiff (*e.g.*, by requiring Grosch to hand over his ID card and giving it to the casino as well as detaining and searching Grosch in the casino's security room as opposed to doing so in the county jail); and second, whether Deputy Mosby committed an intentional tort. False imprisonment, false arrest, malicious prosecution, and abuse of process are intentional torts. *Whitten v. Cox*, 799 So.2d 1 (Miss. 2000) (false imprisonment); *City of Mound Bayou v. Johnson*, 562 So.2d 1212 (Miss. 1990); *Alpha Gulf Coast, Inc. v. Jackson*, 801 So.2d 709 (Miss. 2001) (malicious prosecution); *Mangum v. Jones*, 236 So.2d 741, 743 (Miss. 1970) (abuse of process).

c. Conclusion

Given that the state-law claims against Tunica County and Deputy Mosby are intentional torts, and given a view of the facts in a light most favorable to the plaintiff, the court concludes that there are genuine issues of material fact regarding whether the reckless disregard and police exemptions to the MTCA apply to grant immunity in this case.

**3. Federal Qualified Immunity**

There is a two-step analysis to determine the applicability of federal qualified immunity to Tunica County and Deputy Mosby for the plaintiff's § 1983 claim for violation of the his Fourth and Fourteenth Amendment rights to reasonable seizures. First, the court must determine whether the plaintiff has alleged the violation of a clearly established constitutional right under the current state of the law. *Al-Ra'id v. Ingle*, 69 F.3d 28, 31 (5th Cir. 1995). "Second, if the plaintiff has alleged such a constitutional violation, the court must decide whether the defendant's conduct was 'objectively reasonable,' measured by reference to the law as clearly established at the time of the challenged conduct." *Id*.

After viewing the facts in a light most favorable to the plaintiff, the court concludes that the plaintiff has alleged violation of a clearly established constitutional right – *i.e.*, the right under the Fourth and Fourteenth Amendments to be free of unreasonable seizures. Furthermore, after viewing the facts in the same light, the court concludes that Deputy Mosby's conduct was not objectively reasonable – *e.g.*., requiring the plaintiff to give his ID card without reasonable, articulable suspicion that the plaintiff was engaged in criminal activity; handcuffing, detaining, and searching the plaintiff in the casino security room; and giving the plaintiff's ID card to the casino to copy.

**4. Failure to Train and Supervise**

A federal claim for failure to train and supervise requires that the plaintiff demonstrate (1) inadequate training procedures; (2) which caused the injury; and (3) deliberate indifference of municipal policymakers. *Pineda v. City of Houston*, 291 F.3d 325, 332 (5th Cir. 2002). The plaintiff's failure to train and supervise claim against Tunica County must fail as a matter of law because the plaintiff has not sued a policymaker nor has he otherwise made specific allegations against a policymaker.

**5. Violation of Rights Under the Mississippi Constitution**

The plaintiff's claim against Tunica County and Deputy Mosby for violation of rights under the Mississippi Constitution should be dismissed for failure to demonstrate a genuine issue of material fact regarding same. The plaintiff failed to address this claim in his briefs and only mentioned it in passing in the Second Amended Complaint.

**C. § 1983 Claim**

The Second Amended Complaint asserts a § 1983 claim for violation of the plaintiff's Fourth and Fourteenth Amendment rights against unreasonable seizures against Defendants Tunica County, Deputy Mosby, and HWCC-Tunica, Inc.

"It is clear that a municipality may not be held liable under section 1983 on the basis of *respondeat superior*." *Johnson v. Deep East Texas Regional Narcotics Trafficking Task Force*, 379 F.3d 293, 308 (5th Cir. 2004) (citing *Monell v. Dept. of Soc. Services*, 436 U.S. 658 (1978)). "A municipality's liability under section 1983 requires, among other things, either the unconstitutional action of municipal policymakers or a municipal policy." *Id.* Though the plaintiff sought to amend

his complaint for a second time to add allegations of Tunica County's official policy supporting the actions of Deputies Ray and Mosby, the court recently denied that motion as untimely. In any event, the plaintiff's § 1983 claim against Tunica County must fail pursuant to *Monell* since a policymaker was not named as a defendant. It is undisputed that Defendant Mosby was not a policymaker.

This does not mean, however, that the § 1983 claim must fail with regard to Deputy Mosby in his individual capacity and HWCC-Tunica, Inc.

Pursuant to *Crowder v. Sinyard*, 884 F.2d 804, 825 (5th Cir. 1989), a § 1983 claim in this instance requires that the plaintiff show that the search and seizure occurred and was unreasonable within the meaning of the Fourth Amendment. The claim does not require a showing of injury. The court concludes that the plaintiff has demonstrated a genuine issue of material fact as to whether his seizure was reasonable for the reasons discussed above.

Furthermore, "a private party may be liable for conspiring with state actors to violate civil rights." *Keko v. Hingle*, 318 F.3d 639, 642 (5th Cir. 2003) (citing *Dennis v. Sparks*, 449 U.S. 24 (1980)). "[F]or a plaintiff to state a viable claim under § 1983 against any private defendant, ... the conduct of the private defendant that forms the basis of the claimed constitutional deprivation must constitution state action under color of law." *Morris v. Dillard Dept. Stores, Inc.*, 277 F.3d 743, 747 (5th Cir. 2001). The court concludes that the plaintiff has created a genuine issue of material fact as to whether the casino officials acted in concert with Tunica County Deputies Ray and Mosby given the circumstances alleged in this case, especially since the casino called the deputies reporting that the plaintiff was trespassing and was refusing to leave even though the casino was effectively preventing the plaintiff from leaving by not allowing him to cash in his chips unless he gave them his ID card, Mosby searched and detained the plaintiff in the casino's security room, and Mosby

gave the plaintiff's ID to the casino.

**D. Claims Against HWCC-Tunica, Inc.**

Other than the § 1983 claim, the Second Amended Complaint levies claims of trespass to chattels, conversion, false arrest, false imprisonment, abuse of process against the owner of the casino, HWCC-Tunica, Inc.

1. Trespass to chattels

"While there are no Mississippi cases specifically setting out the elements of the tort of trespass to chattels, the court finds that in order to prevail [the plaintiff] must establish that there has been an unauthorized interference with his possession of personal property, or unauthorized use of his personal property." *Awad v. United States*, 2001 WL 741638 N.D. Miss. 2001) (citing *Fordham v. Eason*, 521 S.E.2d 701, 704 (N.C. 1999)).

After viewing the facts in a light most favorable to the plaintiff, the court concludes that there is a genuine issue of material fact as to whether HWCC-Tunica, Inc. in fact perpetrated "an unauthorized interference" with the plaintiff's personal property by refusing to cash the plaintiff's chips unless he gave the casino his ID card when they had no legal right to require his ID, especially given they had his identity information on his player's card.

2. Conversion

"Conversion requires an intent to exercise dominion or control over goods which is inconsistent with the true owner's right." *Walker v Brown*, 501 So.2d 358, 361 (Miss. 1987). The court concludes that the plaintiff has established a genuine issue of material fact regarding his conversion claim given the casino's apparent intent to control the transition of the plaintiff's chips

into cash, cash which belonged to the plaintiff. Such control would be inconsistent with the plaintiff's rights.

**E. State-law Claims Against Defendants Tunica County, Deputy Mosby, and HWCC-Tunica, Inc.**

1. False Arrest and False Imprisonment

"[W]hen one causes another to be arrested falsely, unlawfully, and maliciously and without probable cause," one is liable for the intentional tort of false arrest. *Croft v. Grand Casino Tunica,Inc.*, 910 So.2d 66, 75-6 (Miss. Ct. App. 2005). In order for a cause of action for the intentional tort of false imprisonment to lie, the plaintiff must show detention of the plaintiff and the unlawfulness of the detention, or the intentional procurement of an unlawful detention of another. *Smith v. Patterson*, 58 So.2d 64, 65 (Miss. 1952).

After viewing the facts in a light most favorable to the plaintiff, the court concludes that the plaintiff has demonstrated genuine issues of material fact regarding whether Tunica County, Deputy Mosby, and HWCC-Tunica, Inc. are liable individually and/or jointly for false arrest and false imprisonment.

2. Malicious Prosecution and Abuse of Process

The elements of malicious prosecution include: (1) institution, or continuation, of an original criminal or civil judicial proceeding; (2) by, or at the insistence of, the defendants; (3) the termination of such proceeding in plaintiff's favor; (4) malice in institution the proceeding; (5) want of probable cause for the proceeding; and (6) suffering of damages as a result thereof." *Bass v. Parkwood Hosp.*, 180 F.3d 234 (5th Cir. 1999); *McClinton v. Delta Pride Catfish, Inc.*, 792 So.2d

968 (Miss. 2001). Defendant HWCC-Tunica, Inc. argues that it cannot be liable for malicious prosecution because it did not press the charges of disorderly conduct that were ultimately pressed upon the plaintiff and therefore the plaintiff cannot meet the second element of malicious prosecution. However, the scope of this element reaches beyond those directly responsible for initiation of criminal proceedings: "[A] defendant may be liable where he communicated the subject matter to the person who signed the complaint and such statement proximately caused the prosecution." *Benjamin v. Hooper Electronic Supply Co.*, 568 So.2d 1182, 1188 (Miss. 1990).

The elements of the intentional tort of abuse of process include: "(1) that the defendant made an illegal and improper perverted use of the process, a use neither warranted nor authorized by the process; (2) that the defendant had an ulterior motive or purpose in exercising such illegal, perverted or improper use of process; and (3) that damage resulted to the plaintiff from the irregularity." *Williamson ex rel. Williamson v. Keith*, 786 So.2d 390, 394 (Miss. 2001).

The court concludes that the plaintiff has demonstrated genuine issues of material fact regarding the elements of malicious prosecution and abuse of process.

**F. Punitive Damages**

"[N]o governmental body, or employee thereof, may be held liable for punitive damages in any action in the courts of the State of Mississippi." *Madison v. DeSoto County*, 822 So.2d 306, 310 (Miss. Ct. App. 2002) (citing Miss. Code Ann. § 11-46-15(2)). However, in *Smith v. Wade*, 461 U.S. 30, 56 (1983), the U.S. Supreme Court held that a jury may award punitive damages in a federal civil rights action based on § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."

Thus, punitive damages are not available against Tunica County and Deputy Mosby for the plaintiff's state-law claims, but they are available for his § 1983 claim against Deputy Mosby in his individual capacity given that precedent from the U.S. Supreme Court trumps that of the courts of Mississippi.

As to HWCC-Tunica, Inc., punitive damages are available for the § 1983 claim using the standard quoted above. As to the plaintiff's state law claims against HWCC-Tunica, Inc., the standard enunciated in Miss. Code Ann. § 11-1-65(1)(1) is that the plaintiff prove by clear and convincing evidence that the casino "acted with actual malice, gross negligence which evidences willful, wanton, or reckless disregard for the safety of others, or committed actual fraud."

The court will reserve ruling upon the applicability of punitive damages against HWCC-Tunica, Inc. for both the § 1983 claim and state-law claims, and against Tunica County and Deputy Mosby for the § 1983 claim, until an award for compensatory is returned, if at all.

### III. CONCLUSION

For the reasons discussed above, the court concludes that Defendant Hollywood Casino Corporation's Motion for Summary Judgment [57] should be granted and that the plaintiff's claims against Hollywood Casino Corporation should be dismissed with prejudice. The court concludes that Defendants Tunica County and Deputy Dornae Mosby's Motion for Summary Judgment [55] should be granted insofar as the plaintiff's failure to train and supervise claim and his §1983 claim against Tunica County and his claim for violation of rights under the Mississippi Constitution against Tunica County and Deputy Mosby should be dismissed with prejudice and is denied in all other respects. The court concludes further that Defendant HWCC-Tunica, Inc.'s Motion for Summary Judgment [58] should be granted insofar as the plaintiff's claim for violation of rights under the

19

Mississippi Constitution should be dismissed with prejudice whereas the motion should be denied in all other respects. According, an Order shall issue forthwith,

**THIS DAY** of January 8, 2008.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE