**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION**

**ADAM GROSCH,**                                                    **PLAINTIFF,**

**VS.**                                          **CIVIL ACTION NO. 2:06CV204-P-A**

**TUNICA COUNTY, MISSISSIPPI;
TUNICA COUNTY DEPUTY SHERIFF
DORNAE MOSBY; HWCC-TUNICA, INC.;
AND HOLLYWOOD CASINO
CORPORATION,**                                            **DEFENDANTS.**

## ORDER

This matter comes before the court upon Defendant HWCC-Tunica, Inc.'s motion to dismiss [101] the plaintiff's claims for trespass to chattels and conversion for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). After due consideration of the motion and the responses filed thereto, the court finds as follows, to-wit:

In its instant motion, Defendant HWCC-Tunica, Inc. ("Hollywood") seeks to dismiss the plaintiff's claims for trespass to chattels and conversion for lack of subject matter jurisdiction, arguing that such claims are within the exclusive jurisdiction of the Mississippi Gaming Commission pursuant to Miss. Code Ann. §§ 75-76-103 and 75-76-157(2).

"The difference between trespass to chattels and conversion is primarily one of degree. Trespass to chattels in modern tort law involves interference or damage that is of a less serious or substantial nature. Conversion claims involve substantial interference or damage. Otherwise the elements are the same. Conversion is by far the more important of the two torts." *Encyclopedia of Mississippi Law*, § 41:77. To prevail on a claim of trespass to chattels, a plaintiff must establish that

1

there has been an unauthorized interference with his possession of personal property, or an unauthorized use of his personal property." *Awad v. United States*, 2001 WL 741638 (N.D.Miss. 2001). "If the interference is of such a substantial nature that the defendant can justly be compelled to pay the entire value of the chattel, the plaintiff's remedy is an action for conversion." *Encyclopedia of Mississippi Law*, § 41:78. "[T]here is a conversion only when there is an 'intent to exercise dominion or control over goods which is inconsistent with the true owner's right.' While intent is necessary, it need not be the intent of a wrongdoer." *Wilson v. General Motors Acceptance Corp.*, 883 So.2d 56,68 (Miss. 2004).

The Second Amended Complaint does not specifically delineate the plaintiff's case theory regarding his claims for trespass to chattels and conversion. The court surmises from the factual background and the briefs that the plaintiff alleges that the defendants exercised dominion and control over his property – *i.e.*, the money that is represented by the casino chips he undisputedly won – which were inconsistent with his ownership rights because the defendants would not cash in his chips unless and until the plaintiff handed over his drivers license to the casino. The plaintiff argues that the defendants had no right to require that he relinquish dominion and control of his ID to the casino for any purpose other than simply verifying his identity.

In the instant motion, the Hollywood Casino characterizes the dispute as one wherein the plaintiff looked to be under twenty-one years of age and that they simply wanted his ID to verify his age. The plaintiff argues that they already knew he was over twenty-one, since he had a player's card and would not have been allowed in the area where he gambled. Furthermore, the plaintiff alleges that he did not refuse to prove his age by showing his ID but rather refused to physically give it to the casino because he feared they would copy his ID and send it to other casinos as a warning that

the plaintiff was a card counter.

Hollywood's primary argument is that the claims of trespass to chattels and conversion should be dismissed because they are within the exclusive jurisdiction of the Mississippi Gaming Commission since they involve a "claim by a patron ... for payment of a gaming debt" pursuant to § 75-76-157(2) of the Mississippi Gaming Control Act. Hollywood cites *Grand Casino Tunica v. Shindler*, 772 So.2d 1036, 1038 (Miss. 2000) for the proposition that the Mississippi Gaming Commission has exclusive jurisdiction over "all gaming matters" and that the trespass to chattels and conversion claims are "gaming matters."

The court disagrees. Section 75-76-157(2) provides: "A claim by a patron of a licensee for payment of a gaming debt not evidenced by a credit instrument may be resolved by the executive director in accordance with Sections 75-76-159 through 75-76-165, inclusive." Though the statute uses the phrase "*may* be resolved by the executive director," the Mississippi Supreme Court has made it clear that claims involving gaming debts are within the exclusive province of the gaming commission. *Shindler*, 772 So.2d at 1038. While it is true that the Court stated in *Shindler* that "[t]he Mississippi Gaming Control Act codified the idea [*i.e.*, that claims based upon any form of gambling are void and unenforceable at common law in Mississippi] by making all gaming matters the exclusive jurisdiction of the Mississippi Gaming Commission," the Court cited § 75-76-157 for that proposition. Subsection (2) of that statute confines the exclusivity to "gaming debt[s]" not "all gaming matters." Thus, this court concludes that the "all gaming matters" language is dicta, especially since the Court concluded that *Shindler* did in fact involve a gaming debt. Even if "all gaming matters" were not construed as dicta, the phrase is defined by the statute cited at the end of the sentence, thereby converting the meaning of "all gaming matters" into "gaming debts."

The Mississippi Supreme Court has recently indicated that "all gaming matters" means "gaming debts" in relation to § 75-76-157. In *Ameristar Casino Vicksburg, Inc. v. Duckworth*, — So.2d —, 2008 WL 2447274 (Miss. June 19, 2008), the Court concluded that a dispute involving a raffle at a casino was not within the jurisdiction of the Mississippi Gaming Commission because the dispute did not involve a game of gambling or a "gaming debt" pursuant to § 75-76-157. After citing *Shindler*'s holding that "all gaming matters are the exclusive jurisdiction of the Mississippi Gaming Commission," the Court in *Duckworth* went on to say: "Therefore, we consider whether a particular dispute between a patron and a casino springs from 'a gaming debt.'" *Duckworth*, 2008 WL 2447274 at *1. The Court concluded that "[t]he provisions of the Gaming Control Act clearly limit the MGS's jurisdiction to disputes between patrons and casinos arising from gambling debts" and "the dispute between Duckworth and Ameristar is unrelated to a 'gambling debt.'" *Id*. at *2

If Hollywood were correct that the gaming commission enjoys exclusive jurisdiction over "all gaming matters" when defined expansively as "any dispute that would not exist but for participation in gambling," then, in theory, all of the plaintiff's remaining Mississippi-law causes of actions – *i.e.*, false arrest, false imprisonment, abuse of process, and malicious prosecution – would also be within the exclusive jurisdiction of the gaming commission. Section 75-76-157(2) by its plain language clearly does not indicate this. Rather, it confines its reach to claims involving payment of gaming debts.

The plaintiff in the instant case argues that his trespass to chattels and conversion claims are not claims for gaming debts since he is not asserting "[a] claim ... for payment of a gaming debt" per § 75-76-157(2) because he in fact received his money. Rather, the focus of his claims, he argues, is on the unlawful withholding of his undisputed winnings unless and until he turned over his other

personal property – *i.e.*, his identification – to the control and dominion of the defendants. The plaintiff alleges that he never agreed to hand over his ID to the casino and they would not have received and copied it but for the actions of the Tunica County Sheriff's Department in taking his ID from him.

The court is persuaded that this understanding of the plaintiff's trespass to chattels and conversion claims takes them out of the realm of seeking payment for a gaming debt. Therefore, the gaming commission does not have exclusive jurisdiction over these claims pursuant to § 75-76-157(2).

Hollywood alternatively argues that the gaming commission enjoys exclusive jurisdiction over the plaintiff's trespass to chattels and conversion claims by virtue of the disciplinary action statute found in Miss. Code Ann. § 75-76-103. Although this statute provides that the "executive director shall make appropriate investigations ... to determine whether there has been any violation of this chapter or of any regulation adopted thereunder," Hollywood has cited no authority establishing that such investigations are the exclusive remedy for a patron who alleges the casino is guilty of wrongdoing unrelated to gaming debts. Accordingly, the court concludes that § 75-76-103 does not expressly stand for the proposition that claims involving casino non-gaming debt wrongdoing are within the exclusive jurisdiction of the gaming commission.

**IT IS THEREFORE ORDERED AND ADJUDGED** that Defendant HWCC-Tunica, Inc.'s motion to dismiss [101] the plaintiff's claims for trespass to chattels and conversion for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) is **DENIED**.

**SO ORDERED** this the 2nd day of July, A.D., 2008.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE